IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RAJESH SOIN,

    Plaintiff,

v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

    Defendant.

: 

:   Case No. 3:21-cv-19

:   JUDGE WALTER H. RICE

:

---

DECISION AND ENTRY SUSTAINING DEFENDANT STATE FARM
MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT (DOC. #30); OVERRULING PLAINTIFF
RAJESH SOIN'S MOTION FOR SUMMARY JUDGMENT (DOC. #31);
AND OVERRULING AS MOOT JOINT MOTION FOR CONTINUANCE
OF TRIAL DATE (DOC. #39); JUDGMENT TO ENTER IN FAVOR OF
DEFENDANT AND AGAINST PLAINTIFF; TERMINATION ENTRY

---

Plaintiff, Rajesh Soin ("Soin" or "Plaintiff"), filed a Complaint against Defendant, State Farm Mutual Automobile Insurance Company ("State Farm" or "Defendant"), for breach of contract. Doc. #3. The suit stems from a property damage claim submitted by Soin to State Farm for damage done to his 2018 Rolls Royce Ghost by an uninsured motorist. The Complaint was originally filed in the Common Pleas Court of Greene County, Ohio, and was properly removed to this Court on January 14, 2021. Doc. #1.

This matter is currently before the Court on Defendant's Motion for Summary Judgment, Doc. #30, and Plaintiff's Motion for Summary Judgment.

Doc. #31. In addition to filing responses and replies to the motions, Doc. ##32, 37,[1] 36 and 38, the parties have also filed an Amended Stipulation of Facts. Doc. #20.

For the reasons set forth below, the Court sustains State Farm's Motion for Summary Judgment, Doc. #30, overrules Plaintiff's Motion for Summary Judgment, Doc. #31, and overrules as moot the Joint Motion for Continuance of Trial Date. Doc. #39.

## I. Background Facts

In July of 2018, Plaintiff purchased a new Rolls Royce Ghost ("the Car") for approximately $380,000. Doc. #20, PageID#72. On November 18, 2018, the Car was involved in an accident with an uninsured motorist. Soin submitted a claim to his insurer, State Farm, for the damage to his vehicle. *Id.*; Doc. #3, PageID#22. The parties agree that the fair market value of the Car at the time of the accident was approximately $306,000. Doc. #20, PageID#72.

Sometime after the accident, Soin had his Car towed to Euro Classics, a company owned by Dale Oakes and located in Moraine, Ohio. Doc. #21, PageID#128. Euro Classics had serviced and repaired vehicles owned by Soin and his family for many years. *Id.* Doc. #31-1, Page ID#683. Soin testified that State Farm did not choose Euro Classics to do the repairs on the vehicle. Doc. #21,

---

[1] Doc. ##34 and 37, Plaintiff's Rajesh Soin's Memorandum Contra Defendant State Farm's Motion for Summary Judgment, are duplicates. The Court will refer, when necessary, to the later filing, Doc. #37.

PageID#128. He also testified that he did not communicate with State Farm concerning the Car and never reviewed his State Farm policy of insurance (the "Policy").[2] *Id.*, PageID##129, 124 and 131. Instead, Soin stated he had his executive assistant, Michelle Hahn, handle all communications concerning the vehicle. *Id.* PageID##129-130. He testified he never "directly or indirectly" told Defendant through Michelle Hahn that he would rather have the Car totaled and also testified he never said he wanted it repaired. *Id.*, PageID##138-139. Plaintiff stated that he told her he wanted the Car returned to him in the condition it had been in before the November 18, 2018, accident and assumed, but did not know, that this information was communicated by her to State Farm. *Id.*, PageID##130 and 138.

Michelle Hahn testified that she never told State Farm that the Car should be totaled.[3] Doc. #23, PageID##361-362. Because Plaintiff was copied on a series of emails between July 30, 2019, and December 18, 2019, he was aware that Michelle Hahn was working with Dale Oakes to have the Car repaired and knew there would be some delays in obtaining parts, that Euro Classics had "submitted a supplement in the amount of $73,000 in additional parts and labor" to State

---

[2] The parties have attached a certified policy of insurance from State Farm to their Amended Stipulation of Facts. Doc. #20.

[3] The parties do not define the word "totaled" in their filings. The Court assumes the meaning of this word is where the cost to repair the vehicle exceeds the fair market value of the Car.

3

Farm and that a re-inspection of the vehicle had occurred. Doc. #21, Page ID##130,132-134 and 136.

Dale Oakes testified Euro Classics performed repairs on the Car for over 18 months and that these were authorized by Michelle Hahn, acting on behalf of Plaintiff, the owner of the Car. Doc. #31-1, PageID#684; Doc. #22, PageID##184-185; 226-227. The delay in completing the repairs occurred, according to Oakes, due to a government shutdown and obtaining luxury parts from a supplier. Doc. #22, PageID##231-232. He also testified that from November 21, 2018, through July 30, 2019, he communicated with Michelle Hahn about repairs to the Car via email and at no time stated to her in these emails that the Car should be totaled. *Id.*, PageID#233. Oakes affidavit states that he recommended to Neal Martin, a State Farm field appraiser, that the Car should be totaled and not repaired. Doc. #31-1, PageID#683; Doc. #28, PageID#559. His affidavit states he told Martin the reason for his recommendation was because the Car was a "hand assembled, high end car," delivery delays would occur in obtaining replacement parts since they were being shipped from the United Kingdom and that damage was done to the rear of the Car, rendering it inoperable when it came to Euro Classics, thus making it difficult to repair. *Id.*, PageID#684. Oake's affidavit states that Martin agreed with him but "[n]evertheless decided to repair and" not total the Car. *Id.* According to his affidavit, Oakes also recommended to two other State Farm personnel that the Car should be totaled. *Id.*

4

Neal Martin, however, denied that he ever agreed that the Car should be totaled, testified it was not until July 29, 2019, that Oakes said the Car should be totaled and that he gave no reason for this recommendation. Doc. #28, PageID##582 and 585-586. Marie Evans, a claims specialist at State Farm who was also assigned to Plaintiff's claim, testified that she spoke with Plaintiff on one occasion and that, although he had requested compensation for the diminished value of the Car, she told Michelle Hahn that the Policy did not provide this coverage. Doc. #26 PageID##509 511-512. Marie Evans also testified she approved one repair estimate for the Car, and that whether a vehicle is a total loss is between State Farm's Total Loss Department and the Estimatics Department. *Id.* PageID##497 and 503. Both Marie Evans and Neal Martin testified that State Farm repairs a vehicle back to the condition it was in prior to the accident, *Id.*, PageID##536-537, although Neal Martin explained that repairing a vehicle to its pre-accident condition is the responsibility of the repair shop. Doc. #28, PageID#624.

The parties stipulated that Defendant paid all the invoices it received for repairs to the Car and that State Farm paid approximately $120,000 in repairs. Doc. #20, PageID#72.

When Soin received the Car back from Euro Classics, he was dissatisfied with its condition including, but not limited to, the "automatic leveling feature." Doc. #21, PageID##146-147. He testified he was told by Dale Oakes that the Car's electronics, which control the leveling feature, were damaged in the accident and

5

that the Car "could never be put together to the original level." Doc. #21, PageID#147; Doc.#31-1, PageID#684. In the fall of 2020, Soin asked Dale Oakes to assist him in trading in or selling the Car. Because no dealer would accept it, the Car was sold to a wholesale dealer for $160,000. Doc. #31-1, PageID#684.

In addition to stipulating to the certified copy of the Policy, the date and purchase price of the Car, the date of the accident and the value of the Car after the accident, the parties have also stipulated to the following: State Farm (1) did not offer Soin a choice, either directly or through his representatives, to have the vehicle treated as a total loss as opposed to paying the cost of repairs; (2) did not offer Soin the option of paying him the pre-accident value of his vehicle rather than paying for the cost of repairs; (3) did not submit Plaintiff's claim pertaining to his vehicle to its Total Loss Department; and (4) never considered the vehicle to be a "total loss" at any time during the claims handling process. Doc. #20, PageID#72-73.

## II. Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a

6

genuine issue of material fact. Id. at 323; see also *Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Best., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a

7

court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe; credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure § 2726 (3d ed. 1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). If it so chooses, however, a court may consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

The standard of review for cross-motions of summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits." *Id.* (citations omitted).

8

### III. Legal Analysis

Soin's sole claim for relief against State Farm is one for breach of contract of the Policy. Doc. #3. In Ohio, "[A]n insurance policy is a contract whose interpretation is a matter of law." *Sauer v. Crews,* 140 Ohio St. 3d 314, 2014 Ohio-3655, 18 N.E. 3d 410, ¶ 10 (citing *Sharonville v. Am. Emp. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 6); *Gomolka v. State* Auto. Mut. Ins. Co., 70 Ohio St. 2d 166, 167, 436 N.E.2d 1347, 1348 (1982). Said contracts are interpreted by applying rules of construction and interpretation that are applicable to basic contract law. *City of Sharonville v. Am. Employers Ins. Co.*, 109 Ohio St.3d 186, 187, 846 N.E.2d 833 (2006). Although "[L]anguage in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer," *Faruque v. Provident Life & Accident Ins. Co.*, 31 Ohio St.3d 34, 508 N.E.2d 949, syl. ¶ 1 (1987), provisions are to be strictly construed against the insurer only when they are ambiguous. *GenCorp, Inc. v. Am. Intern. Underwriters*, 178 F.3d 804, 818 (6th Cir.1999). "Moreover, the general rule of liberal construction cannot be used to create an ambiguity where one does not exist. If the terms of a policy are clear and unambiguous, a court must enforce the contract as written, giving words used in the contract their plain and ordinary meaning." *Monticello Ins. Co. v. Hale*, 284 F.Supp.2d 898, 901 (S.D. Ohio 2003) (citations omitted).

To determine whether a claim for breach of contract exists, the Court first examines the relevant section of the Policy, in this case entitled "Physical Damage Coverages," which reads as follows:

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**
1. *We* have the right to choose to settle with *you* or the owner of the covered vehicle in one of the following ways: a. Pay the cost to repair the *covered vehicle* minus any applicable deductible . . . b. Pay the actual cash value of the *covered vehicle* minus any applicable deductible. . .

Doc. #20-1, PageID##97-99.[4]

Here, because the above cited language is not susceptible to more than one meaning, there is no requirement that the Court construe the Policy liberally in favor of Soin and against State Farm. As stated in the Policy, State Farm, and only State Farm, is given the right to choose whether to pay the cost to repair the Car, less any deductible, or pay the actual cash value of the car, less any deductible. Although the parties spend considerable time disputing whether Soin, Marie Hahn or State Farm made the decision to repair the Car, such arguments are irrelevant based on the clear and unambiguous Policy language. In this case, State Farm had the option to pay the cost of repairs or the actual cash value of the

---

[4] The parties do not dispute that as used in this section, "*We*" is State Farm, "*you*" is the insured and "*covered vehicle*" is the Car. *Id.*, PageID##81 and 95. Additionally, if the actual cash value is paid, it is less any deductible, the insured and State Farm must agree on the value and the vehicle must be given to State Farm unless it is agreed it can be kept in which case the payment will be reduced. *Id.*, PageID#98.

10

Car and, based on the parties' Stipulation, it chose to pay, and did pay, all repair invoices for the vehicle.[5]

Soin next argues because it was State Farm that chose to pay the costs to repair his Car and not to total it, Defendant had an obligation to return the Car to him in its pre-accident condition. In support of this argument, Plaintiff cites to the deposition testimony of two State Farm adjusters, Marie Evans and Neal Martin, who were assigned to his claim, and to the affidavit of Dale Oakes. Soin contends that the testimony of these three witnesses shows that State Farm had a duty under the Policy to total the Car and not repair it. Plaintiff's argument that liability for his breach of contract claim exists because of a "duty" State Farm had under the Policy fails both as a matter of law and of fact.

As stated in the Complaint, Plaintiff's sole claim is one for breach of contract. No tort claim, such as negligence, is asserted by him. Accordingly, there is no duty or obligation for State Farm to total the Car, to advise Soin that it should be totaled, or to cease repairs and total the Car.[6] Even assuming, arguendo, State Farm was advised that the Car could never be repaired

---

[5] In addition to citing to the Policy section entitled "Physical Damage Coverages," Plaintiff also cites to the "Uninsured Motor Vehicle Property Damage Coverage" section to show that State Farm, and not Soin, made the decision to repair the Car. Doc. #20-1, PageID#93. The Declarations Page, however, shows coverage only for "U," Uninsured Motor Vehicle Coverage for bodily injury, and does not show any coverage for uninsured property damage. *Id.*, PageID##75 and 89.

[6] Although Soin repeatedly argues that the Car should have been "totaled," nowhere in the policy of insurance does it reference, much less define, "totaling" a vehicle or any obligation of State Farm to do so.

11

successfully and was told it should be totaled for any or all of the reasons Dale Oakes stated in his affidavit, Plaintiff's claim is only for breach of contract. As stated previously, the Policy language gives Defendant the option to choose whether to pay the cost of repairs for the Car or its actual cash value. Plaintiff cites to no Policy language that State Farm breached or that creates any alleged duty or obligation requiring Defendant to return the Car to Soin in its pre-accident condition.[7] Finally, Plaintiff's reliance on the deposition testimony of two State Farm adjusters, Marie Evans and Neal Martin, to create a duty on behalf of Defendant to return Plaintiff's Car to him after repairs in its pre-accident condition is factually inaccurate. Soin has made no showing that these two adjusters were identified as corporate representatives of State Farm pursuant to Fed. R. Civ. P. 30(b)(6) and, as further explained by Neal Martin, repairing a vehicle to its pre-accident condition is the responsibility of the repair shop. Doc. #28, PageID#624.

The Court's reading of the plain language of the Policy is that Defendant is not required to total the Car or to return it to Plaintiff in its pre-accident condition. Instead, State Farm was only required to choose whether to pay the cost to repair the Car or pay to Soin its actual cash value. Because State Farm and Soin agreed that Defendant paid all the repair invoices for the Car, the Policy was not breached. Moreover, because the only claim asserted by Plaintiff is for breach of

---

[7] Although Plaintiff asserts that this "obligation is set forth in the Policy at Page 22 and elsewhere . . .," Doc. #37, PageID#811, he fails to state in any of his pleadings what the language "in the Policy at Page 22 and elsewhere" states that creates this alleged obligation.

12

contract, the Court further finds that there is no duty or obligation at issue in this case that creates liability for State Farm. Plaintiff's arguments that Defendant had other obligations sound in negligence, a theory of recovery that was not pled.

Accordingly, the Court finds there is no genuine issue of material fact and that State Farm is entitled to judgment as a matter of law. Defendant's Motion for Summary Judgment, Doc. #30, is sustained and Plaintiff's Motion for Summary Judgment, Doc. #31, is overruled.

## IV. Conclusion

For the above stated reasons, Defendant's Motion for Summary Judgment, Doc. #30, is SUSTAINED, Plaintiff's Motion for Summary Judgment, Doc. #31, is OVERRULED. The Joint Motion for Continuance of the Trial Date, Doc. #39, is OVERRULED as moot.

Judgment is to enter in favor of Defendant, State Farm Mutual Automobile Insurance Company, and against Plaintiff, Rajesh Soin.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date September 28, 2022

WALTER H. RICE